**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

AUG 11 2005

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY
```

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.:  03-27989 (DHS) |
| **Manyfoods, Inc.**, | Adversary No.  05-01843 (DHS) |
| Debtor. | Judge: Donald H. Steckroth, U.S.B.J. |
| **Manyfoods, Inc.**, Plaintiff, | |
| v. | |
| **Interstate Realty Co., LLC and Wal-Mart Stores, Inc.**, Defendants. | |

**OPINION**

**APPEARANCES:**

Okin, Hollander & DeLuca, L.L.P.
Paul S. Hollander, Esq.
One Parker Plaza
Fort Lee, NJ 07024
*Counsel to the Debtor*

Jaffe & Asher LLP
Gregory E. Galterio, Esq.
600 Third Avenue
New York, NY 10016
*Special Litigation Counsel to the Debtor*

Riker, Danzig, Scherer,
 Hyland & Perretti, LLP
Joseph L. Schwartz, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
*Counsel for Defendant,*
*Wal-Mart Stores, Inc.*

Lasser Hochman
John R. Wenzke, Esq.
75 Eisenhower Parkway
Roseland, NJ 07068
*Counsel for Defendant,*
*Interstate Realty Co., LLC*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the motion of defendant Wal-Mart Stores, Inc. ("Wal-Mart") requesting that this Court exercise its discretion to abstain from adjudicating the adversary proceeding filed by the Debtor (the "Action"), which seeks damages for breach of a pre-petition contract and contract-related causes of action arising from alleged violations of a lease between the Debtor, as sub-lessor, and its over-landlord Interstate Realty Co., Inc. ("Interstate"). Interstate, Wal-Mart's co-defendant, joins the motion. The Debtor opposes the motion for abstention. For the reasons that follow, the motion to abstain is denied.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. See 28 U.S.C. § 1334 (1993). This matter is, at least, a related-to proceeding under 28 U.S.C. §§ 157(a) and (c). Venue is appropriate under 28 U.S.C. § 1409.

The Debtor, ManyFoods, Inc. ("Debtor"), was the owner and operator of a supermarket at the Cedar Knolls Shopping Center ("the Cedar Knolls Store") under a sublease with Stop & Shop, Inc. (the "Lease"). According to the Debtor's complaint, the Lease contained restrictive covenants between Interstate, as landlord, and the original tenant, Stop & Shop, which prohibited Interstate from leasing space in the Cedar Knolls Shopping Center, or within a three-mile radius, for use as a supermarket ("Restrictive Covenants"). The Debtor alleges it relied on these Restrictive Covenants in entering its sublease with Stop & Shop.

In November 2001, Wal-Mart entered into a lease with Interstate for space at the Cedar Knolls Shopping Center. The Debtor alleges that, while Wal-Mart initially only sold a small amount of food items

at its Cedar Knolls location, Wal-Mart steadily increased its food sections until it was essentially a full-fledged supermarket which directly competed with the Debtor in violation of the Restrictive Covenants.

The Debtor claims that these alleged violations were one of the significant causes for the Debtor filing for Chapter 11 protection on May 29, 2003. After efforts to reorganize under Chapter 11 failed, on January 26, 2004, this Court entered an order approving the sale of the Debtor's assets, including its Cedar Knolls Store and assignment of the Lease to Olivia Supermarkets, LLC, pursuant to section 363 of the Bankruptcy Code. The Debtor contends that the violation of the Restrictive Covenants by Wal-Mart greatly decreased the market value of the Cedar Knolls Store which damaged the Debtor and its bankruptcy estate.

On May 16, 2005, the Debtor instituted the Action with a six-count complaint claiming 1) breach of lease, tortious interference with contract, and unjust enrichment against Interstate, and 2) tortious interference with contract, aiding and abetting in breach of contract, unfair competition, and unjust enrichment against Wal-Mart. In its complaint, the Debtor claims that the alleged violations of the Restrictive Covenants caused the Debtor to incur damages of more than $2 million in lost sales and reduced profit margins, and damages of more than $2.5 million representing the decrease in the value the Debtor was able to realize for the Lease in the § 363 sale, all due to Wal-Mart's actions. Special litigation counsel was retained to represent the Debtor in the Action.

Prior to filing answers, Wal-Mart filed the instant abstention motion and Interstate subsequently joined in the motion. In seeking abstention, Wal-Mart asserts this Court should not accept jurisdiction over claims regarding pre-petition actions of the parties and further asserts that the Action will have little

4

effect, if any, on the administration of the estate because any recovery would go simply to satisfaction of sums owed to secured creditors and/or for professional fees. See Wal-Mart Brief at 6.

The Debtor contends that this proceeding directly involves post-petition events and the administration of the estate, namely the marketability of the Lease in the § 363 sale, and thus is a cause of action which has potential to increase the size of the estate for the benefit of all creditors. At the conclusion of the hearing on the motion, the Debtor and the secured creditor, White Rose Division of DiGiorgio Corporation ("White Rose"), advised the Court that they had reached an agreement relative to a sharing of net proceeds from the Action. That agreement was placed on the record and confirmed by letter and agreement dated August 5, 2005. The agreement provides, in relevant part, that: (1) White Rose would limit its claim against the Debtor's Chapter 11 estate to the principal sum of $1.2 million (despite having filed a claim in excess of $4.5 million); (2) the Debtor's estate would receive 25% of the net proceeds, if any, derived from claims against Wal-Mart and Interstate, whether realized by settlement, judgment, or otherwise, which would be available and paid to the Chapter 11 estate of the Debtor for distribution pursuant to the Bankruptcy Code or further order of the Bankruptcy Court; (3) White Rose would not participate as a creditor of the Debtor in the distributions made to the bankruptcy estate. The 25% is in addition to a 15% carve-out previously agreed to between the Debtor and White Rose for payment of professional fees incurred during the Chapter 11 proceeding.

## **LEGAL CONCLUSION**

Title 28 U.S.C. § 1334(b) confers "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." See 28 U.S.C. § 1334(b) (West 2004); see also Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 787 (D.N.J. 1995).

The Debtor argues that the adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate. Debtor argues that since the loss involved occurred post-petition, any cause of action accrues to the estate and is best considered a core proceeding. See In re Nutri/System, Inc., 159 B.R. 725 (E.D. Pa. 1993). Wal-Mart strenuously opposes that argument stating that the pre-petition claim does not constitute a core proceeding because it is not a case "under Chapter 11" or a proceeding "arising under Title 11" or "arising in" a case under Title 11. See In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991); Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). A final decision as to whether this adversary proceeding is a core proceeding does not have to be made at this time in order to resolve the instant motion. Clearly, all parties agree the Action is "related to" the case under Chapter 11 and thus this Court has related-to jurisdiction under 28 U.S.C. § 157(a) and (c). See Wal-Mart's Brief at 11; Debtor's Brief at 7.

It cannot be disputed that this Court has related-to jurisdiction. The Third Circuit defines related-to jurisdiction broadly. A proceeding is related to a pending bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). The "key word in this test is 'conceivable.' Certainty, or even

likelihood, is not a requirement." Marcus Hook, 943 F.2d at 264. The relevance of the core/non-core distinction is the extent of this Court's authority to issue a final order or judgment. A non-core classification means that the proceeding may still be heard in the bankruptcy court but, instead of entering a final order in the case, the bankruptcy court, absent the consent of all parties, must submit proposed findings of fact and conclusions of law to the district court. See 28 U.S.C. § 157(c)(1). See also Halper, 164 F.3d at 836. However, in the instant matter, Wal-Mart has indicated it will seek a jury trial and will move, pursuant to the District of New Jersey Local Bankruptcy Rules, for withdrawal of the reference and removal of the matter to the district court. See D.N.J. LBR 9015-1; 5011-1. Thus, the requirement that this Court making findings of fact and conclusions of law to be submitted to the district court will be moot and the matter will proceed as a jury trial before the District Court for the District of New Jersey.[1]

Under the permissive abstention doctrine set forth in 28 U.S.C. § 1334(c)(1), bankruptcy courts may refrain from hearing a case if the case is better suited for another court. Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

A court's determination of whether to exercise its discretion to abstain is "necessarily fact-driven," and abstention is only appropriate in a "narrow sphere" of cases. Balcor/Morristown, 181 B.R. at 793. The accepted factors to consider in determining whether to abstain are:

---

[1] This Court reserves the right to make a final determination as to the issue of whether the instant adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157 in the event a jury trial is not demanded and the matter not transferred to the district court.

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) comity;
>
> (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy estate;
>
> (6) the existence of the right to a jury trial; and
>
> (7) prejudice to the involuntarily removed defendants.
>
> In re Mid-Atlantic Handling Sys., LLC, 304 B.R. 111, 126 (Bankr. D.N.J. 2003) (citing In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 760 (D.N.J. 1996)).[2]

Here, the Court's primary concern is whether the Action will have the potential to benefit the Debtor's estate. Keeping the Action in this Court does nothing for the Debtor, the estate, or the unsecured creditor body if the only parties who stand to benefit are the secured creditor and professionals. However, that does not appear to be the case sub judice. The Action seeks damages of $4.5 million. The Debtor's secured creditor, White Rose, certainly stands to benefit from the Action. It has secured claims which exceed $4.5 million, but has agreed to reduce its allowed claim to approximately $1.2 million to permit a surplus for creditors. In addition, it has now agreed to allow the Debtor's estate 25% of any recovery (less costs, special litigation counsel's continency fees, and a 15% carve out for professional fees) for the benefit

---

[2] Some courts also consider the following additional factors: (i) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (ii) the substance rather than the form of an asserted "core" proceeding; (iii) the feasibility of severing the state law claims; (iv) the burden on the court's docket; (v) the presence in the proceeding of nondebtor parties. Gibbons v. Stemcor USA, Inc. (In re B.S. Livingston & Co., Inc.), 186 B.R. 841, 861-62 (D.N.J. 1995); see also, Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.), 156 B.R. 441, 443 (Bankr. D. Del. 1993) (listing all factors above except for prejudice to removed defendants).

of creditors and White Rose will not participate as a creditor in any such distribution. This arrangement generates a potential benefit to the estate provided the Action is decided favorably for the Debtor. Plus, the Debtor's estate receives the added benefit of an increased pool of funds from other avoidance actions started by the Debtor to the extent that an award in the Action pays down the outstanding White Rose debt. Thus, for these financial reasons, the Court finds that the Action confers sufficient benefit to have an effect on the administration of the bankruptcy estate. For this reason, the Court will continue exercising its jurisdiction.

The second and third factors – the extent and difficulty of state law issues – are not determinative in this case. While the Action involves only state law claims, which typically weighs in favor of abstention, the state law issues are settled and not complex. This Court is capable of adjudicating such state law claims. See, e.g., In re Birdsboro Ferrocast, Inc., 153 B.R. 154, 155 (Bankr. E.D. Pa. 1993) (noting that federal courts are capable of determining state law issues); In re Bell & Beckwith, 55 B.R. 872 (Bankr. N.D. Ohio 1985) (where the bankruptcy court rejected the motion to abstain from a case based upon issues of state law where no state court case was then pending and the case was related to a complex liquidation proceeding before the bankruptcy court). Further, the Action involves substantial facts about the Debtor's financial affairs pre- and post-petition, the Debtor's bankruptcy case in general, and assignment of the Lease pursuant to § 363 in particular. This Court is already intimately familiar with those facts, and to the extent that bankruptcy law and procedure are involved, this Court is better equipped than a state court to deal with such matters.

The fourth factor, comity, is of no moment here. With no complex state law issues or unsettled questions of law, and without a pending state court action, there is no state court to which this Court should defer. The principle of comity is therefore not violated by abstention.

The fifth factor, the degree of relatedness or remoteness of the proceeding to the main bankruptcy estate, is self evident if the allegations of the complaint are accepted as true. The allegations directly relate to damage suffered by the Debtor through both pre- and post-petition conduct of Wal-Mart, which conduct and damage decreased the value of the Debtor's assets to the detriment of its creditors. These allegations, if true, are directly related to the main bankruptcy estate and favor denial of the abstention motion.

The last two factors – the right to a jury trial and prejudice to involuntarily removed defendants – are similarly inconsequential. The jury trial can be conducted in the district court. This Court may manage the case (or it will be undertaken by a magistrate judge) for the district court until the point of trial, and it is the jury that ultimately will decide the facts. Thus, this Court can utilize its knowledge of the Debtor's bankruptcy case to efficiently manage the case to the point of trial without another court unnecessarily familiarizing itself with the facts. Finally, the Court finds Wal-Mart's claim that it would be burdened by hiring additional counsel to navigate the differences between state and bankruptcy law to be unpersuasive. It has already retained experienced counsel with expertise in all relevant areas of the law involved in the Action and the Bankruptcy Code.

Finding that there is a potential benefit to the Debtor's estate if the Action is successful, and that adjudicating the matter in this Court is, at this point, appropriate and more efficient than re-filing and

10

beginning anew in state court, the Court determines it will not abstain from the Action and accordingly the motion is denied.

An Order in conformance with this Opinion has been entered and a copy attached.

                                              s/    Donald H. Steckroth
                                              DONALD H. STECKROTH
                                              UNITED STATES BANKRUPTCY JUDGE

Dated: August 11, 2005